

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **(1)** | **STATE FARM FIRE AND CASUALTY COMPANY, an Illinois Corporation,** | ) ) ) |
| | **Plaintiff,** | ) ) |
| **vs.** | | ) ) |
| **(1)** | **ABERDEEN ENTERPRIZES II, INC., an Oklahoma Corporation;** | ) ) ) |
| **(2)** | **JIM D. SHOFNER;** | ) |
| **(3)** | **RENITA SHOFNER;** | ) |
| **(4)** | **ROBERT SHOFNER;** | ) |
| **(5)** | **OKLAHOMA'S SHERIFFS' ASSOCIATION;** | ) ) |
| **(6)** | **MIKE WATERS;** | ) |
| **(7)** | **R. B. HAUF;** | ) |
| **(8)** | **HARLAN MOORE;** | ) |
| **(9)** | **MICHAEL BOOTH;** | ) |
| **(10)** | **SHANNON SMITH;** | ) |
| **(11)** | **TONY HEAD;** | ) |
| **(12)** | **CHRIS WEST;** | ) |
| **(13)** | **JIM WEIR;** | ) |
| **(14)** | **CLAY SANDER;** | ) |
| **(15)** | **BOBBY WHITTINGTON;** | ) |
| **(16)** | **ROGER LEVICK;** | ) |
| **(17)** | **CARLY GRAFF;** | ) |
| **(18)** | **RANDY FRAZIER;** | ) |
| **(19)** | **DAVID SMITH;** | ) |
| **(20)** | **KENDALLIA KILLMAN;** | ) |
| **(21)** | **LINDA MEACHUM ;** | ) |
| **(22)** | **CHRISTOPHER CHOATE;** | ) |
| **(23)** | **IRA LEE WILKINS; and** | ) |
| **(24)** | **MELANIE HOLMES.** | ) ) |
| | **Defendants.** | ) ) |

Case No.

**FILED**

DEC 1 7 2018

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

**18 CV  654 JHP - FHM**

## COMPLAINT FOR DECLARATORY JUDGMENT

**COMES NOW** the Plaintiff, State Farm Fire and Casualty Company ("State Farm"), and

hereby seeks declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq.*, relating to the rights and

1



liabilities of the parties under certain insurance policies as more fully set forth herein.

## I. JURISDICTION AND VENUE

1.      Plaintiff State Farm is incorporated and has its principal place of business in the State of Illinois.

2.      Defendant Aberdeen Enterprizes II, Inc. ("Aberdeen") is an Oklahoma corporation with its principal place of business in Tulsa, Oklahoma.

3.      Defendant Jim D. Shofner is a citizen and resident of Oklahoma, Tulsa County.

4.      Defendant Renita Shofner is a citizen and resident of Oklahoma, Tulsa County.

5.      Defendant Robert Shofner is a citizen and resident of Oklahoma, Tulsa County.

6.      Defendant Oklahoma Sheriffs' Association, Inc. ("OSA") is an Oklahoma corporation with its principal place of business in Edmond, Oklahoma. The OSA does business throughout the State of Oklahoma, including Tulsa County.

7.      Defendant Mike Waters is a citizen and resident of Oklahoma, Pawnee County.

8.      Defendant R. B. Hauf is a citizen and resident of Oklahoma, Payne County.

9.      Defendant Harlan Moore is a citizen and resident of Oklahoma, Delaware County.

10.      Defendant Michael Booth is a citizen and resident of Oklahoma, Pottawatomie County.

11.      Defendant Shannon Smith is a citizen and resident of Oklahoma, Seminole County.

12.      Defendant Tony Head is a citizen and resident of Oklahoma, Atoka County.

13.      Defendant Chris West is a citizen and resident of Oklahoma, Canadian County.

14.      Defendant Jim Weir is a citizen and resident of Oklahoma, Grady County.

15.      Defendant Clay Sander is a citizen and resident of Oklahoma, Dewey County.

2

16.     Defendant Bobby Whittington is a citizen and resident of Oklahoma, Tillman County.

17.     Defendant Roger LeVick is a citizen and resident of Oklahoma, Jackson County.

18.     Defendants Carly Graff and Melanie Holmes are residents and citizens of Oklahoma, Rogers County.

19.     Defendants Randy Frazier, David Smith, Linda Meachum, Christopher Choate, and Lee Wilkins are residents and citizens of Oklahoma, Tulsa County.

20.     Defendant Kandallia Killman is a resident and citizen of Oklahoma, Oklahoma County.

21.     Defendants Graff, Frazier, Smith, Killman, Meachum, Choate, Wilkins, and Holmes, ("Underlying Plaintiffs") are Plaintiffs in a class action lawsuit filed in the United States District Court for the Northern District of Oklahoma styled *Carly Graff et al. v. Aberdeen Enterprizes II, Inc., et al.*, Case Number 17-cv-606-CVE-JFJ ("Underlying Action").

22.     Defendants herein, Aberdeen, Jim D. Shofner, Renita Shofner, Robert Shofner, OSA, Mike Waters, R. B. Hauf, Harlan Moore, Michael Booth, Shannon Smith, Tony Head, Chris West, Jim Weir, Clay Sander, Bobby Whittington, and Roger LeVick are Defendants in the Underlying Action. Throughout this Complaint, the foregoing Defendants shall be referred to as the "Underlying Defendants" or by their individual names.

23.     This is a declaratory judgment action relating to the rights and liabilities of certain parties under State Farm Businessowners Insurance Policy, Policy Number 96-73-6754-7, and State Farm Businessowners Insurance Policy, Policy Number 96-B1-W299-2. Certified copies of the Policies are attached as Exhibits 1 and 2 respectively.

24.     The Underlying Action is a putative class action in which the Underlying Plaintiffs

3

allege that the class, collectively, includes thousands of members. (Second Amended Class Action Complaint ("SACAC"), ¶¶ 233, 245, 247, 258, Exhibit 3). The Underlying Plaintiffs allege that their RICO claim alone involves "thousands of indigent persons." (SACAC, ¶ 303, Exhibit 3). These "thousands of people" seek to recover from the Underlying Defendants "compensatory damages" including money they paid in court fines and debts which they contend unjustly enriched Aberdeen, "treble damages as authorized by RICO, 18 U.S.C. § 1964(c)," attorneys' fees, costs, and punitive damages. (SACAC, ¶¶ 15, 317, 371; p. 98, ¶ b.; p. 100, ¶ j., Exhibit 3). The damages the Underlying Plaintiffs seek to recover include part or all of "approximately $1.2 million a month in revenue" that Aberdeen allegedly collected through its Agreement with the OSA. (SACAC, ¶ 107, Exhibit 3). The Underlying Plaintiffs allege that in 2016 alone, Aberdeen "made over $829,075 from its warrant collection program." (SACAC, ¶ 105, Exhibit 3). The Underlying Plaintiffs allege that similar class actions in other states have generated settlements in the millions. (SACAC, ¶ 272, Exhibit 3). The Underlying Defendants herein have made demand on State Farm under the subject Policies to pay for their defense in the Underlying Action and to indemnify them for the monetary damages the Underlying Plaintiffs seek to recover from them in the Underlying Action. State Farm is providing a defense to the sixteen (16) Underlying Defendants in the Underlying Action subject to reservation of rights. Aberdeen has made demand on State Farm to indemnify it under the Policies for its defense and indemnity of at least fifty-four (54) of the Sheriff Defendants in the Underlying Action. Subject to their terms and conditions, the Policies provide Business Liability Coverage with limits in excess of $75,000. (Policies, Declarations, Exhibits 1 and 2). This Court has original jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy between State Farm and the Underlying Defendants and Underlying Plaintiffs exceeds Seventy-Five Thousand Dollars ($75,000.00)

exclusive of interest and costs, and the action is between citizens of different states.

25.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

## II. FACTS

26.     This declaratory judgment action arises from requests made by the Underlying Defendants herein for State Farm to defend and indemnify them under the above noted insurance Policies in relation to the Underlying Action.

27.     In their SACAC filed in the Underlying Action, the Underlying Plaintiffs allege that their "lawsuit challenges an unlawful and extortionate court debt collection scheme perpetrated by Defendants Aberdeen .... the Oklahoma Sheriffs' Association ... and the Sheriffs of 54 counties across Oklahoma." (SACAC, ¶ 1, Exhibit 3). The alleged "scheme" is described by the Underlying Plaintiffs as follows:

> Aberdeen, Inc. collects court debts pursuant to a contract it entered into with the Sheriffs' Association, acting in its capacity as the agent of the 54 Sheriff Defendants. The contract outsources the function of collecting court debt to Aberdeen, Inc., a private, for-profit company. Under this scheme, when a person does not pay her court debt within a certain amount of time, the court clerk automatically seeks a warrant for that person's arrest, based solely on the nonpayment. Judges routinely sign these debt-collection arrest warrants. When a judge signs a debt-collection arrest warrant for an individual with a case arising in the Defendant Sheriffs' counties, the court clerk has discretion under the contract to transfer the case to Aberdeen, Inc. to take over the collection process, and routinely does so. Under an Oklahoma law governing court debts (enacted as a result of lobbying by the Sheriffs' Association), a 30-percent penalty surcharge is added to the amount owed when a court clerk transfers a case to the private company for collection. Aberdeen, Inc. and the Sheriffs' Association then retain a portion of the money Aberdeen, Inc. collects, up to an amount equal to the 30-percent penalty. The entire process of seeking arrest warrants, issuing arrest warrants, transferring the case to Aberdeen, Inc., and adding a 30-percent penalty surcharge occurs without any inquiry into the individual's ability to pay.

***

5

The Sheriff Defendants enforce Aberdeen, Inc.'s extortionate methods by routinely arresting and jailing individuals pursuant to these debt-collection arrest warrants that are based solely on nonpayment. When a debtor is jailed for nonpayment, the Sheriff Defendants will not release her unless she pays a fixed sum payment to get out of jail. In Tulsa County and Rogers County, release on "bond" or "bail" is not an option, as any money paid is directly applied to the debt allegedly owed, not used to secure appearance at a future court date. Sheriffs in numerous counties detain individuals who cannot pay in jail for days before they are allowed to see a judge—again, without ever making an inquiry into ability to pay—while allowing those able to pay to go free. In some counties, judges, including the Rogers County Judge, later order individuals to remain in jail and "sit out" their debt if they cannot make a payment at the time they are eventually brought to court. Neither sheriffs nor judges (nor anyone else) provide any of the inquiries, findings, or procedural safeguards required by Supreme Court precedent prior to jailing a person for nonpayment.

(SACAC, ¶¶ 5, 10, Exhibit 3).

28.    Based on the foregoing alleged scheme, the Underlying Plaintiffs seek to recover from the Underlying Defendants under the following ten (10) legal "Counts" set forth in the Underlying Plaintiffs' SACAC:

Count One: Racketeer Influenced and Corrupt Organizations Act;

Count Two: Seeking, Issuing, and Executing Debt-Collection Arrest Warrants Based Solely on Nonpayment, Without Inquiry into Ability to Pay Violates Plaintiffs' Rights Under the Fourteenth Amendment;

Count Three: Seeking, Issuing, and Executing Debt-Collection Arrest Warrants Based Solely on Unsworn Allegations of Nonpayment Containing Material Omissions Violates Plaintiffs' Rights Under the Fourth Amendment;

Count Four: Detaining Persons Arrested on Debt-Collection Arrest Warrants Because of an Inability to Pay Violates Plaintiffs' Rights Under the Fourteenth Amendment;

Count Five: Jailing Debtors Without Proof of Willfulness Without Notice and a Hearing Violates Their State Created Liberty Interests;

Count Six: Aberdeen, Inc.'s Role in Collecting Court Debts and Requesting and Recalling Arrest Warrants Violates the Due Process Clause;

Count Seven: Defendants' Policy and Practice of Subjecting Individuals Who Owe

6

Debt to Onerous Collection Enforcement Methods Violates the Fourteenth
Amendment;

Count Eight: The Practice of Using Arrest Warrants to Coerce Plaintiffs into Making
Monetary Payments They Cannot afford Constitutes Abuse of Process;

Count Nine: Duress; and

Count Ten: Unjust Enrichment.

(SACAC, pp. 80-98, Exhibit 3).

29.     The Underlying Plaintiffs seek the following equitable relief and damages in the

Underlying Action:

WHEREFORE, Plaintiffs respectfully request that the Court provide the following
relief:

a.     Certification of the classes, represented by the named Plaintiffs, described in
paragraphs 214-273.

b.     An award of treble damages as authorized by RICO, 18 U.S.C. § 1964(c);

c.     An order declaring it unlawful for Defendants to seek, issue, and execute
debt-collection arrest warrants based solely on alleged nonpayment, and similarly that
it is unlawful to seek, issue, and execute such warrants without inquiry into ability
to pay, consideration of alternatives, pre-deprivation process, and factual allegations
based on oath or affirmation;

d.     An order prohibiting Aberdeen, Inc., Jim Shofner, Rob Shofner, the Tulsa
Cost Administrator, the Tulsa and Rogers County Court Clerks, Tulsa County,
Rogers County, the Sheriffs' Association, and the 54 Sheriff Defendants from
seeking or enforcing debt-collection arrest warrants based on nonpayment without
making inquiry into the warrant subject's ability to pay and consideration of
alternatives;

e.     An order declaring it unlawful for the Tulsa County Judges and Rogers
County Judge to issue debt-collection arrest warrants on the basis of unsworn
statements, and declaring the same unconstitutional;

f.     An order prohibiting the Tulsa County and Rogers County Sheriffs from
holding individuals arrested on debt-collection arrest warrants in jail unless they pay

a pre-set sum, without any inquiry into ability to pay and without advancing a compelling government interest, and declaring the same unconstitutional;

g.      An order enjoining Defendants from using a debt collection company that exercises control over debtors' liberty and also has a direct financial interest to infringe on that liberty, and declaring the same unconstitutional;

h.      An order enjoining the practice of subjecting individuals too poor to pay their court debts to more onerous collection methods, including, but not limited to, imposing additional financial penalties, threats of arrest, arrest and detention, and declaring the same unconstitutional;

i.      An order enjoining the collection of a 30-percent penalty surcharge from individuals too poor to pay their court debt, and declaring the assessment of that penalty, without any inquiry into an individual's ability to pay, unconstitutional;

j.      An award of compensatory and punitive damages;

k.      An award of declaratory and injunctive relief;

l.      An award of Plaintiffs' costs and reasonable attorneys' fees; and

m.      An order of such other relief as the Court deems just and appropriate.

(SACAC, pp. 99-100, Exhibit 3).

### III.  DECLARATORY JUDGMENT

**A.**      **The Policies do not Extend Coverage to the Damages the Underlying Plaintiffs Seek to Recover From the Underlying Defendants in the Underlying Action**

30.      State Farm adopts and incorporates herein paragraphs 1 through 29 of this Complaint.

31.      Subject to their terms and conditions, the Policies extend coverage to "bodily injury" and "property damage" caused by an "occurrence." Specifically, the coverage extension clause in Policy Number 96-73-6754-7 for the policy period 2-12-2010–2-12-2011 provides in relevant part as follows:

8

## COVERAGE L – BUSINESS LIABILITY

We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury, property damage, personal injury** or **advertising injury** to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplemental Payments. This insurance applies only:

1.    to **bodily injury** or **property damage** caused by an **occurrence** which takes place in the coverage territory during the policy period;

2.    to **personal injury** caused by an **occurrence** committed in the **coverage territory** during the policy period. The **occurrence** must arise out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

3.    to **advertising injury** caused by an **occurrence** committed in the **coverage territory** during the policy period. The **occurrence** must be committed in the course of advertising your goods, products or service.

(Policy Number 96-73-6754-7, 2-12-2010–2-12-2011, p. 20, Exhibit 1). The coverage extension

clause in Policy Number 96-73-6754-7 for the Policy periods 2-12-2011–1-14-2016, and the

coverage extension clause in Policy Number 96-B1-W299-2, provide in relevant part as follows:

### Coverage L – Business Liability

1.    When a Limit Of Insurance is shown in the Declarations for **Coverage L – Business Liability**, we will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.

***

2.    This insurance applies:

a.    To "bodily injury" and "property damage" only if:

(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)    The "bodily injury" or "property damage" occurs during the policy period; and

9

\*\*\*

    **b.**     To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

(Policy Number 96-73-6754-7, 2-12-2011–1-14-2016, p. 23, Exhibit 1; Policy Number 96-B1-W29902, p. 23, Exhibit 2).

    32.    The Policies define the term "bodily injury" in relevant part as "bodily injury, sickness or disease ... including death." (Policy Number 96-73-6754-7, 2-12-2010–2-12-2011, p. 30, ¶ 3, Exhibit 1; Policy Number 96-6754-7, 2-12-2011–1-14-2016, p. 34, ¶ 3, Exhibit 1; Policy Number 96-B1-W299-2, p. 34, ¶ 3, Exhibit 2).

    33.    In their SACAC, the Underlying Plaintiffs do not allege bodily injury, sickness, disease or death. Accordingly, the Underlying Plaintiffs do not seek to recover from the Underlying Defendants for "bodily injury" as that term is defined in the Policies. Therefore, the bodily injury coverage provided by the Policies does not apply.

    34.    The Policies define the term "property damage" in relevant part as physical injury to tangible property. Specifically, Policy Number 96-73-6754-7 for the Policy period 2-12-2010–2-12-2011, defines the term "property damage" as follows:

    14.    **property damage** means:

    a.    physical injury to or destruction of tangible property, including all resulting loss of use of that property. All such loss of use will be considered to occur at the time of the physical injury caused it; or

    b.    loss of use of tangible property that is not physically injured or destroyed, provided such loss of use is caused by physical injury to or destruction of other tangible property. All such loss of use will be considered to occur at the time of the **occurrence** that caused it;

(Policy Number 96-73-6754-7, 2-12-2010–2-12-2011, p. 33, ¶ 14, Exhibit 1). Policy Number 96-73-6754-7 for the Policy periods 2-12-2011–1-14-2016, and Policy Number 96-B1-W299-2, define the term "property damage" as follows:

    **21.**    "Property damage" means:

        **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

        **b.**    Loss of use of tangible property that is not physically injured or destroyed, provided such loss of use is caused by physical injury to or destruction of other tangible property. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(Policy Number 96-73-6754-7, 2-12-2011–1-14-2016, p. 36, ¶ 21, Exhibit 1; Policy Number 96-B1-W299-2, p. 36, ¶ 21, Exhibit 2).

    35.    In the Underlying Action, the Underlying Plaintiffs seek to recover from the Underlying Defendants for RICO violations, violation of their constitutional rights, abuse of process, duress, and unjust enrichment. (SACAC, pp. 80-98, Exhibit 3).

    36.    The Underlying Plaintiffs seek the following damages: treble damages as authorized by RICO, injunctive relief, declaratory judgment, compensatory damages, punitive damages, costs, and attorneys' fees. (SACAC, pp. 89-98, 100, Exhibit 3).

    37.    In their SACAC, the Underlying Plaintiffs do not allege physical injury to tangible property. Accordingly, the damages the Underlying Plaintiffs seek to recover from the Underlying Defendants do not constitute "property damage" as that term is defined in the Policies. Therefore, the property damage coverage provided by the Policies does not apply.

    38.    Subject to their terms and conditions, the Policies extend coverage to bodily injury

and property damage "caused by an occurrence." (Policy Number 96-73-6754-7, 2-12-2010–2-12-2011, p. 20, Exhibit 1; Policy Number 96-73-6754-7, 2-12-2011–1-14-2016, p. 23, Exhibit 1; Policy Number 96-B1-W29902, p. 23, Exhibit 2). Even if the Underlying Plaintiffs seek to recover from the Underlying Defendants for "bodily injury" or "property damage" as those terms are defined in the Policies, the bodily injury or property damage still must be caused by an "occurrence" within the meaning of that term in the Policies. (Policy Number 96-73-6754-7, 2-12-2010–2-12-2011, p. 20, Exhibit 1; Policy Number 96-73-6754-7, 2-12-2011–1-14-2016, p. 23, Exhibit 1; Policy Number 96-B1-W29902, p. 23, Exhibit 2).

39.    The Policies define the term "occurrence" in relevant part as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Policy Number 96-73-6754-7, 2-12-2010–2-12-2011, p. 32, ¶ 10, Exhibit 1; Policy Number 96-73-6754-7, 2-12-2011–1-14-2016, p. 36, ¶ 17, Exhibit 2; Policy Number 96-B1-W299-2, p. 36, ¶ 17, Exhibit 2).

40.    Under Oklahoma law, an "accident" within the meaning of that term in a liability insurance policy is an "[a]n event that takes place without one's foresight or expectation, an undesigned, sudden and unexpected event, chance, contingency." *U.S. Fid. and Guar. Co. v. Briscoe*, 1951 OK 386, 239 P.2d 754, 757 (describing an "accident" under an insurance policy as an event that takes place "by some unexpected happening").

41.    The Underlying Plaintiffs' claims are for RICO violations, violations of constitutional rights under the Fourth and Fourteenth Amendments, abuse of process, duress, and unjust enrichment. (SACAC, pp. 80-98, Exhibit 3). The Underlying Plaintiffs' SACAC is devoid of any allegation or fact supporting or suggesting that their damages and/or injuries were caused by an

accident. Instead, the Underlying Plaintiffs allege injuries arising from Aberdeen's policies and procedures relating to a debt collection scheme which they allege is based on extortion, threats, and coercion. (SACAC, ¶¶ 1, 2, 3, 4, 8, 9, 10, 12, 14, 20, 47, 48, 49, 52, 66, 76, 77, 85, 126, 132, 138, 154, 173, 174, 193, 223, 224, 230, 233, 237, 238, 279, 282, 283, 286, 290, 293, 296, 300, 301, 303, 304, 307, 308, 311, 357, 361, 369; p. 99, ¶ h., Exhibit 3). The claims of the Underlying Plaintiffs are not for bodily injury or property damage caused by an "accident," and therefore the Policies do not extend coverage to the damages the Underlying Plaintiffs seek to recover from the Underlying Defendants.

42.     Under Oklahoma law, abuse of process is an intentional tort. *Dry v. United States*, 235 F.3d 1249, 1257 (10th Cir. 2000). Injury arising from an intentional tort is not injury caused by an accident. *Penley v. Gulf Ins. Co.*, 1966 OK 84, 414 P.2d 305, 308 (citing *Minkov v. Reliance Ins Co. of Pa.*, 54 N.J.Super.A.D. 509, 149 A.2d 260, for the proposition that "an intentional or willful tort would negative the existence of an accident ....").

43.     The liability coverage provided by the Policies does not apply to "personal injury" or "advertising injury." Specifically, Policy Number 96-73-6754-7 for the Policy period 2-12-2010–2-12-2011 includes Endorsements FE-6345 and FE-6346 which provide as follows:

### ADVERTISING INJURY EXCLUSION ENDORSEMENT

We do not insure for **advertising injury** and all references to **advertising injury** in Section II of the policy are deleted.

All other provisions of the policy apply.

\*\*\*

### ADVERTISING INJURY EXCLUSION ENDORSEMENT

We do not insure for **personal injury** and all references to **personal injury** in

13

Section II of the policy are deleted.

All other provisions of the policy apply.

(Policy Number 96-73-6754-7, 2-12-2010–2-12-2011, Endorsements FE-6345 and FE-6346, Exhibit

1). Policy Number 96-73-6754-7 for the Policy periods 2-12-2011–1-14-2016, and Policy Number

96-B1-W299-2, include Endorsement CMP-4721 which provides as follows:

THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY

**CMP-4721 EXCLUSION – PERSONAL AND ADVERTISING INJURY**

This endorsement modifies insurance provided under the following:
BUSINESSOWNERS COVERAGE FORM
The following is added to **SECTION II – LIABILITY** and supersedes any
provision to the contrary:

The insurance provided under **SECTION II – LIABILITY** does not apply to
"personal and advertising injury."

(Policy Number 96-73-6754-7, 2-12-2011–1-14-2016, CMP-4721 EXCLUSION – PERSONAL

AND ADVERTISING INJURY, Exhibit 1; Policy Number 96-B1-W299-2, CMP-4721

EXCLUSION – PERSONAL AND ADVERTISING INJURY, Exhibit 2). Thus, the Policies do not

provide coverage for personal and advertising injury.

44.    The phrase "legally obligated to pay" set forth in the coverage extension clause in the

Policies refers only to tort claims and therefore does not extend to Plaintiffs' claims for RICO

violations, constitutional violations, and equitable/injunctive relief. *See Boggs v Great N. Ins. Co.*,

659 F.Supp.2d 1199, 1210 (N.D. Okla. 2009) ("The phrase[ ] 'legally obligated to pay' ... refer[s]

only to tort claims."); *VBF, Inc. v. Chubb Group of Ins. Cos.*, 263 F.3d 1226, 1231 (10th Cir. 2001)

(same).

45.    In addition to actual damages, the Underlying Plaintiffs seek to recover punitive

14

damages. (SACAC, ¶ 15; p. 100, ¶ j., Exhibit 3). Punitive damages are not damages for "bodily injury" or "property damage" caused by an "occurrence" as those terms are defined in the Policies. Even if the Policies extended coverage to such damages, Oklahoma public policy does not allow a defendant to escape liability for exemplary or punitive damages by shifting the loss to his/her/its insurer. *See Boggs*, 659 F.Supp.2d at 1209 n. 7; *Dayton Hudson Corp. v. Am. Mut. Liab. Ins.*, 521 P.2d 1155 (Okla. 1980). Thus, the Policies do not extend coverage to punitive damages.

46.     The Underlying Plaintiffs seek to recover "treble ... damages authorized by statute based on willful and egregious violations of law." (SACAC, ¶ 317; p. 98, ¶ b., Exhibit 3). Plaintiffs' treble damages claim is made in relation to their RICO claim. (SACAC, ¶¶ 278-317, 98, ¶ b., Exhibit 3). Treble damages recoverable for RICO violations are damages to punish and deter or damages in the form of fines or penalties. *See Summers v. Fed. Deposit Ins. Corp.*, 592 F.Supp.2d 1240, 1243 (W.D.Okla. 1984)(finding treble damages under RICO "essentially penal"). Accordingly, the same reasoning underlying the public policy impediment to insuring against punitive damages applies with equal force to treble damages and therefore treble damages are not covered by the Policies.

47.     For the reasons set forth in paragraphs 1 through 46 herein, State Farm respectfully requests declaratory judgment to the effect that the Policies do not extend coverage to the injuries/damages the Underlying Plaintiffs seek to recover from the Underlying Defendants in the Underlying Action.

**B.      The Policies Exclude Coverage for the Damages the Underlying Plaintiffs Seek to Recover From the Underlying Defendants in the Underlying Action**

48.     State Farm adopts and incorporates herein paragraphs 1 through 47 of this Complaint.

49.     The absence of the extension of coverage is dispositive of coverage under the

Policies, and therefore policy exclusions are irrelevant. In the alternative, even if the Policies extend coverage to the damages alleged by the Underlying Plaintiffs, policy exclusions apply thereby negating coverage.

### 1.    *The Contractual Liability Exclusion*

50.    Aberdeen entered into an Agreement for Collection ("Collection Contract") with the Oklahoma Sheriffs Association ("OSA"). The Collection Contract contains the following indemnity clause:

> **6.    Indemnity, Limitation of Liability and Disclaimer of Warranties.**
>
> (a)    It is hereby acknowledged and agreed by the Parties that Association, its Board members, officers, County Sheriffs and Court Clerks shall have no liability for any acts or omissions by Aberdeen, its officers, agents and/or employees, connection with its performance or failure to perform its duties and obligations under this Agreement. Rather, notwithstanding anything to the contrary, Aberdeen shall indemnify, defend, and forever hold harmless Association, its Board members, officers and directors, the County Sheriffs, the State of Oklahoma, the Oklahoma District Courts, the Administrative Office of the Courts and their officials, agents and employees from and against any and all claims, damages, liabilities, costs and expenses (including reasonable attorneys' fees) (collectively "Claims") arising out of any breach of Aberdeen's warranties, representations and duties and/or obligations pursuant to this Agreement including, without limitation, any acts or omissions on the part of Aberdeen and/or any officer(s), agent(s), and/or employee(s) of Aberdeen in connection with its performance under the terms of this Agreement. Upon receipt by Aberdeen of written notice of any Claim for which such indemnity applies, Aberdeen shall immediately undertake the defense of any claim or action and permit Association to participate, in Association's sole discretion.

(Collection Contract, pp. 8-9, ¶ 6(a), Exhibit 4) (hereinafter "indemnity clause").

51.    The entities and persons identified in the indemnity clause to which indemnity, if any, extends are: "the Association [OSA], its Board members, officers and directors, the County Sheriffs,

the State of Oklahoma, the Oklahoma District Courts, the Administrative Office of the Courts and their officials, agents and employees." (hereinafter "Indemnitees") (Collection Contract, pp. 8-9, ¶ 6(a), Exhibit 4).

52.    Based on the indemnity clause in the Collection Contract, the indemnitees made demand on Aberdeen for defense and indemnity in relation to the Underlying Action. In turn, Aberdeen made demand on State Farm to indemnify it for its contractual liability, if any, to the Indemnitees pursuant to the Collection Contract.

53.    The Policies exclude coverage for Aberdeen's assumption of liability in a contract or agreement. Specifically, Policy Number 96-73-6754-7 for the Policy period 2-12-2010–2-12-2011 includes the following contractual liability exclusion:

**BUSINESS LIABILITY EXCLUSIONS**

Under Coverage L, this insurance does not apply:

***

2.    to **bodily injury** or **property damage** for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

  a.    assumed in a contract or agreement that is an **insured contract**, provided the **bodily injury** or **property damage** occurs after the execution of the contract or agreement.

  b.    that the insured would have in the absence of the contract or agreement;

(Policy Number 96-73-6754-7, 2-12-2010–2-12-2011, p. 21, ¶ 2, Exhibit 1). Policy Number 96-73-6754-7 for the Policy periods 2-12-2011–1-14-2016, and Policy Number 96-B1-W299-1, include the following Contractual Liability exclusion:

17

## Section II – Exclusions

Applicable to **Coverage L – Business Liability**, this insurance does not apply to:

\*\*\*

2.      **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

a.      That the insured would have in the absence of the contract or agreement; or

b.      Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purpose of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(1)      Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(2)      Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

(Policy Number 96-73-6754-7, 2-12-2011–1-14-2016, pp. 24-25, ¶ 2, Exhibit 1; Policy Number 96-B1-W299-2, pp. 24-25, ¶ 2, Exhibit 2).

54.      Policy Number 96-73-6754-7 for the Policy period 2-12-2010–2-12-2011 defines the term "insured contract" in relevant part as follows:

5.      that part of any other contract or agreement pertaining to your business, including an indemnification of a municipality in connection with work performed for a municipality, under which you assume the tort liability of

18

another party to pay for **bodily injury** or **property damage** to a third person or organization if the contract or agreement is made prior to the **bodily injury** or **property damage**. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

(Policy Number 96-73-6754-7, 2-12-2010–2-12-2011, pp. 30-31, ¶ 6, Exhibit 1). Policy Number 96-

73-6754-7 for the Policy periods 2-12-2011–1-14-2016, and Policy Number 96-B1-W299-2, define

the term "insured contract" in relevant part as follows:

f.      That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(Policy Number 96-73-6754-7, 2-12-2011–1-14-2016, p. 35, ¶ 10.f., Exhibit 1; Policy Number 96-

B1-W299-2, p. 35, ¶ 10.f., Exhibit 2).

55.     Based on the foregoing terms and definition, the Policies do not provide coverage for

"damages by reason of the assumption of liability in a contract or agreement." The demand made by

the Indemnitees for Aberdeen to indemnify and defend them in the Underlying Action is based on

the assumption of liability pursuant to the indemnity clause in the Collection Contract. As such, the

Contractual Liability exclusion applies unless one of the above noted exceptions to that exclusion

apply.

56.     The exception for "liability for damages: a. [b.] [t]hat the insured would have in the

absence of the contract or agreement," does not apply because there is no law requiring Aberdeen

to indemnify or defend the Indemnitees in the Underlying Action. That liability, if any, is imposed

solely by the indemnity clause in the Collection Contract. Thus, the foregoing exception to the

Contractual Liability exclusion does not apply because Aberdeen would not have liability to the

19

Indemnitees "in the absence of the contract or agreement."

57.    The remaining exception to the Contractual Liability exclusion provides in relevant part as follows: "This exclusion does not apply to liability for damages: ... a. [b.] [a]ssumed in a contract or agreement that is an 'insured contract' ...." (Policy Number 96-73-6754-7, 2-12-2010–2-12-2011, p. 21, ¶ 2, Exhibit 1; Policy Number 96-73-6754-7, 2-12-2011–1-14-2016, pp. 24-25, ¶ 2, Exhibit 1; Policy Number 96-B1-W299-2, pp. 24-25, ¶ 2, Exhibit 2).

58.    The Policies define the term "insured contract" in relevant part as a "contract or agreement pertaining to your business ... under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization." (Policy Number 96-73-6754-7,  2-12-2010–2-12-2011, p. 31, ¶ 7, Exhibit 1; Policy Number 96-73-6754-7, 2-12-2011–1-14-2016, p. 35, ¶ 10.f., Exhibit 1; Policy Number 96-B1-W299-2, p. 35, ¶ 10.f., Exhibit 2). Thus, in order for the Collection Contract to constitute an "insured contract," Aberdeen must have agreed in the Collection Contract to "*assume the tort liability*" of the Indemnitees.

59.    The indemnity clause in the Collection Contract is devoid of any reference to Aberdeen assuming the tort liability of the Indemnitees. Instead, the indemnity clause provides that Aberdeen shall indemnify the Indemnitees for their liability for *Aberdeen's* breach of warranties, representations, duties and/or obligations pursuant to the Collection Contract. Specifically, the indemnity clause provides in relevant part as follows:

> It is hereby acknowledged and agreed by the Parties that Association, its Board members, officers, County Sheriffs and Court Clerks shall have no liability *for any acts or omissions by Aberdeen, its officers, agents and/or employees*, connection with its performance or failure to perform its duties and obligations under this Agreement. Rather, notwithstanding anything to the contrary, *Aberdeen shall indemnify, defend, and forever hold harmless* Association, its Board members, officers and directors, the County Sheriffs, the State of Oklahoma, the Oklahoma District Courts, the Administrative Office of the Courts and their officials, agents and

20

employees *from and against any and all claims, damages, liabilities, costs and expenses* (including reasonable attorneys' fees) (collectively "Claims") *arising out of any breach of Aberdeen's warranties, representations and duties and/or obligations pursuant to this Agreement* including, without limitation, any acts or omissions on the part of Aberdeen and/or any officer(s), agent(s), and/or employee(s) of Aberdeen in connection with its performance under the terms of this Agreement.

(Collection Contract, p. 8-9, ¶ 6(a), Exhibit 4) (emphasis added).

60.     Based on the indemnity clause, Aberdeen did not assume the tort liability of the Indemnitees. Accordingly, the Collection Contract is not an "insured contract."

61.     Because neither exception to the Contractual Liability exclusion applies, the exclusion applies, and no coverage exists under the Policies for Aberdeen's contractual liability, if any, to the Indemnitees for their defense and indemnity in the Underlying Action. Accordingly, State Farm has no contractual obligation to reimburse Aberdeen for its defense and indemnity of the Indemnitees in the Underlying Action.

### 2.     *The Expected or Intended Injury Exclusion*

62.     Policy Number 96-73-6754-7 for the Policy period 2-12-2010–2-12-2011 includes the following exclusion for bodily injury or property damage expected or intended, and for bodily injury or property damage which is willful and malicious:

**BUSINESS LIABILITY EXCLUSIONS**

Under Coverage L, this insurance does not apply to:

1.     to **bodily injury** or **property damage**:

a.     expected or intended from the standpoint of the insured; or

b.     to any person or property which is the result of willful and malicious acts of the insured.

This exclusion does not apply to **bodily injury** or **property**

21

> **damage** resulting from the use of reasonable force to protect persons or property;

(Policy 96-73-6754-7, 2-12-2010–2-12-2011, p. 21, ¶ 1, Exhibit 1). Policy Number 96-73-6754-7 for

the Policy periods 2-12-2011–1-14-2016, and Policy Number 96-B1-W299-2, include the following

exclusion for bodily injury or property damage expected or intended to cause harm, and bodily injury

or property damage resulting from willful and malicious or criminal acts of the insured:

---

**Section II – Exclusions**

---

Applicable to **Coverage L – Business Liability**, this insurance does not apply to:

1.     Expected Or Intended Injury

    a.     "Bodily injury" or "property damage" expected or intended to cause harm as would be expected by a reasonable person; or

    b.     "Bodily injury" or "property damage" which is the result of willful and malicious, or criminal acts of the insured.

    This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

(Policy Number 96-73-6754-7, 2-12-2011-1-14-2016, p. 24, ¶ 1, Exhibit 1; Policy Number 96-B1-

W299-2, p. 24, ¶ 1, Exhibit 2).

    63.     In the Underlying Action, the Underlying Plaintiffs seek to recover from the

Underlying Defendants for alleged injuries expected or intended to cause harm as would be expected

by a reasonable person. (SACAC, ¶¶ 27, 28, 52, 138, 159, 160, 165, 166, 167, 168, 171, 173, 174,

178, 179, 183, 184, 190, 192, 193, 196, 198, 203, 207, 208, 211, 279-314, 315, 322-372, Exhibit

3). The Underlying Plaintiffs' SACAC is devoid of any allegation or fact supporting or suggesting

that their injuries were unintended or caused by negligence. Accordingly, the exclusion quoted in

paragraph 62 above applies, thereby removing coverage, if any, for the damages the Underlying

Plaintiffs seek to recover from the Underlying Defendants.

64.     In the Underlying Action, the Underlying Plaintiffs seek to recover from the Underlying Defendants for damages arising from alleged civil RICO violations. Civil RICO requires proof of a "racketeering activity" which constitutes "any act which is indictable" under title 18 of the United States Code. *Ginsberg v. ICC Holdings, LLC*, 2017 WL 5467688, *21 (N.D. Tex. Nov. 13, 2017). Additionally, the Underlying Plaintiffs expressly allege that the Underlying Defendants have acted "unlawfully" and "illegally." (SACAC, ¶¶ 1, 4, 11, 14, 15, 33, 65, 66, 83, 118, 140, 154, 215, 224, 226, 230, 231, 238, 240, 244, 245, 252, 256, 263, 267, 272, 281, 282, 293, 297, 301, 303, 304, 308, 311, 325, 335, 351, 364, 369; pp. 98, 100, Exhibit 3). To the extent the Underlying Plaintiffs seek to recover from the Underlying Defendants for injuries resulting from alleged willful, malicious, or criminal acts or omissions of the Underlying Defendants, the exclusion quoted in paragraph 62 above applies, thereby removing coverage, if any, for the damages the Underlying Plaintiffs seek to recover from the Underlying Defendants.

### 3.     *The Personal and Advertising Injury Exclusion*

65.     The Policies do not provide "personal and advertising injury" coverage based on Endorsements FE6345 and FE-6346 to Policy Number 96-73-6754-7 for the Policy period 2-12-2010–2-12-2011, based on Endorsement CMP-4721 to Policy Number 96-73-6754-7 for the Policy periods 2-12-2011–1-14-2016, and Endorsement CMP-4721 to Policy Number 96-B1-W299-2. Additionally, Policy Number 96-73-6753-7, 2-12-2010–2-12-2011, includes the following exclusion for personal or advertising injury:

**BUSINESS LIABILITY EXCLUSIONS**

Under Coverage L, this insurance does not apply:

23

\*\*\*

16.     to **personal injury** or **advertising injury**:

    a.     arising out of oral or written publication of material if done by or at the direction of the insured with knowledge of its falsity;

    b.     arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

    c.     arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

    d.     for which the insured has assumed liability in a contract or agreement. This part of this exclusion does not apply to liability for damages that the insured would have in the absence of a contract or agreement.

(Policy Number 96-73-6754-7, 2-12-2010–2-12-2011, p. 24, ¶ 16, Exhibit 1). Policy Number 96-73-754-7, 2-12-2011–1-14-2016, and Policy Number 96-B1-W299-2, include the following exclusion for personal or advertising injury:

**Section II – Exclusions**

Applicable to **Coverage L – Business Liability**, this insurance does not apply to:

\*\*\*

17.     **Personal And Advertising Injury**

    a.     Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

\*\*\*

    d.     For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

\*\*\*

    n.     Arising out of a criminal act committed by or at the direction of the

24

insured.

(Policy Number 96-73-6754-7, 2-12-2011–1-14-2016, p. 28, ¶ 17, Exhibit 1; Policy Number 96-B1-W299-2, p. 28, ¶ 17, Exhibit 2).

    **C.**     **Aberdeen is not an "Insured" Under Policy Number 96-B1-W299-2**

    66.     Subject to its terms and conditions, Policy Number 96-B1-W299-2 extends coverage to "the insured." (Policy Number 96-B1-W299-2, p. 23, Exhibit 2). Policy Number 96-B1-W299-2 defines who is an insured in relevant part as follows:

**Section II – WHO IS AN INSURED**

    **1.**     Except for liability arising out of the use of "non-owned autos":

        **a.**     if you are designated in the Declarations as:

            **(1)**     An individual, you and your spouse are insureds, but only with respect to the conduct of a business, other than described in **(2)** through **(5)** below, of which you are the owner.

(Policy Number 96-B1-W299-2, p. 31, Exhibit 2). Individuals, Jim D. and Renita Shofner, are designated in the Declarations of Policy Number 96-B1-W299-2. (Policy Number 96-B1-W299-2, Declarations, Exhibit 2). Accordingly, Aberdeen is not an "insured" pursuant to the 'WHO IS AN INSURED" provision in Policy Number 96-B1-W299-2.

    67.     Policy Number 96-B1-W299-2 includes Endorsement CMP-4789 which identifies "Additional Insureds." Endorsement CMP-4789 provides as follows:

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY

**CMP-4789 ADDITIONAL INSURED – CO-OWNER OF PREMISES**

This endorsement modifies insurance provided under the following:
BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

25

Policy Number: 96-B1-W299-2
Named Insured:

SHOFNER JIM D & RENITA
4143 E. 31ST ST
Tulsa OK 74135-1514

Name And Address Of Additional Insured Person Or Organization

ABERDEEN ENTERPRIZES II
4143 E. 31st ST
Tulsa OK 74135-1514

Location Of Premises:

4143 E. 31st ST Tulsa OK 741351514

1.   **SECTION II – WHO IS AN INSURED of SECTION II – LIABILITY**
is amended to include as an additional insured, any person or organization
shown in the Schedule, *but only with respect to their liability as co-owner of*
*the premises shown in the Schedule.*

2.   Any insurance provided to the additional insured shall only apply with
respect to a claim made or a "suit" brought for damages for which you are
provided coverage.

All other policy provisions apply.

(Policy Number 96-B1-W299-2, Endorsement CMP-4789 Additional Insured – Co-Owner of

Premises, Exhibit 2) (emphasis added).

68.     Aberdeen Enterprizes II is an Additional Insured pursuant to Endorsement CMP-4789

"but only with respect to [its] liability as co-owner of the premises shown in the Schedule." (Policy

Number 96-B1-W299-2, Endorsement CMP-4789 Additional Insured–Co-Owner of Premises,

Exhibit 2).

69.     In the Underlying Action, the Underlying Plaintiffs have not sued Aberdeen for

liability as co-owner of the premises shown in the Schedule. Accordingly, even if coverage existed

26

under Policy Number 96-B1-W299-2 for the injuries alleged by the Underlying Plaintiffs, which it does not, coverage does not exist for Aberdeen because it has not been sued "*with respect to [its] liability as co-owner of the premises shown in the Schedule.*"

70.     With the exception of Jim and Renita Shofner, and subject to the terms and conditions of Policy Number 96-B1-W299-2, none of the Defendants named herein qualify as insureds under Policy Number 96-B1-W299-2.

71.     Subject to its terms and conditions, Policy Number 96-B1-W299-2 provides coverage for "bodily injury" and "property damage" that "occurs during the policy period." (Policy Number 96-B1-W299-2, p. 23, Exhibit 2). Policy Number 96-B1-W299-2 was in effect from January 14, 2016 to January 13, 2018. Thus, even if coverage exists under Policy Number 96-B1-W299-2 for the damages and injuries alleged in the Underlying Action, which it does not, the Policy provides no coverage for bodily injury or property damage occurring before January 14, 2016, or after January 13, 2018.

**D.    Aberdeen was not an "Insured" Under Policy Number 96-73-6754-7 Until June 12, 2013**

72.     Subject to its terms and conditions, Policy Number 96-73-6754-7 extends coverage to "the insured." (Policy Number 96-73-6754-7, 2-12-2010–2-12-2011, p. 20, Exhibit 1; Policy Number 96-73-6754-7, 2-12-2011–1-14-2016, p. 23, Exhibit 1). Policy Number 96-73-6754-7, 2-12-2010–2-12-2011, defines who is an insured in relevant part as follows:

---

**Section II – DESIGNATION OF INSURED**
**WHO IS AN INSURED**

1.     If you are designated in the Declarations as:

    a.     an individual, you and your spouse are insureds but only with respect

to the conduct of a business of which you are the sole owners;

(Policy Number 96-73-6754-7, 2-12-2010–2-12-2011, p. 27, Exhibit 1). Policy Number 96-73-6754-7, 2-12-2011–1-14-2016, defines who is an insured in relevant part as follows:

---

## Section II – WHO IS AN INSURED

1.      Except for liability arising out of the use of "non-owned autos":

    **a.**      if you are designated in the Declarations as:

        **(1)**      An individual, you and your spouse are insureds, but only with respect to the conduct of a business, other than described in **(2)** through **(5)** below, of which you are the owner.

(Policy Number 96-73-6754-7, 2-12-2011–1-14-2016, p. 31, Exhibit 1). Individual, Jim D. Shofner, is designated in the Declarations of Policy Number 96-73-6754-7 for the Policy periods 2-12-2011–2-12-2013. (Policy Number 96-73-6754-7, 2-12-2011–2-12-2013, Declarations, Exhibit 1). "Aberdeen Enterprizes II" was added via Amended Declarations dated June 12, 2013. (Policy Number 96-73-6754-7, 2-12-2013–2-12-2014, Declarations Amended June 12, 2013, Exhibit 1). "Aberdeen Enterprises II, Inc." was added as the Named Insured effective March 5, 2014. (Policy Number 96-73-6754-7, Declarations Amended March 5, 2014, Exhibit 1). Accordingly, even if coverage exists under Policy Number 96-73-6754-7 for the damages and injuries alleged by the Underlying Plaintiffs in the Underlying Action, which it does not, no coverage exists for Aberdeen Enterprises II or Aberdeen Enterprizes II, Inc. prior to the foregoing dates.

73.      Policy Number 96-73-6754-7 was cancelled January 14, 2016. (Acknowledgment of Cancellation Request, 2-12-2015–2-12-2016, Exhibit 1). Accordingly, even if coverage exists under Policy Number 96-73-6754-7 for the damages and injuries alleged by the Underlying Plaintiffs in the Underlying Action, which it does not, no coverage exists for any occurrence after the Policy was

28

cancelled effective January 14, 2016.

     **E.**     **Policy Number 96-73-6754-7 Does not Provide Coverage for the Sole Liability of Additional Insureds**

     74.     Endorsement CMP-4786 to Policy Number 96-73-6754-7, 2-12-2011–1-14-2016, amends the Policy definition of "Who is an Insured." Specifically, Endorsement CMP-4786 provides as follows:

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY

**CMP-4786 ADDITIONAL INSURED–OWNERS, LESSEES, OR CONTRACTORS**
**(Scheduled)**

This endorsement modifies insurance provided under the following:
BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

**Policy Number:  96-73-6754-7**

**Named Insured:**

     **SHOFNER JIM D**
     **4143 E. 31ST ST**
     **Tulsa OK 74135-1514**

**Name And Address Of Additional Insured Person Or Organization:**

     **OKLAHOMA SHERIFFS ASSOCIATION**
     **AND ITS BOARD OF DIRECTORS**
     **EXECUTIVE DIRECTO & OFFICERS**
     **6531 N CLASSEN BLVD STE A**
     **OKLAHOMA CITY OK 73116-7307**

     1.     **SECTION II – WHO IS AN INSURED of SECTION II – LIABILITY** is amended to include as an additional insured, any person or organization shown in the Schedule, but only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" caused, in whole or in part, by:

29

    a.      **Ongoing Operations**

        **(1)** Your acts or omissions; or

        **(2)** The acts or omissions of those acting on your behalf;

        in the performance of your ongoing operations for that additional insured; or

    b.      **Products-Completed Operations**

        "Your work" performed for that additional insured and included in the "products-completed operations hazard."

**2.**    Any insurance provided to the additional insured shall only apply with respect to a claim made or a "suit" brought for damages for which you are provided coverage.

**3.**    Primary Insurance. The insurance afforded the additional insured shall be primary insurance. Any insurance carried by the additional insured shall be noncontributory with respect to coverage provided by you.

    There will be no refund of premium in the event this endorsement is cancelled.

    All other policy provisions apply.

(Policy Number 96-73-6754-7, 2-12-2011–1-14-2016, Endorsement CMP-4786 Additional Insured – Owners, Lessees, or Contractors, Exhibit 1).

    75.    Policy Number 96-73-6754-7 provides that "the words 'you' and 'your' refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy." (Policy Number 96-73-6754-7, 2-12-2011–1-14-2016, Exhibit 1).

    76.    When the Policy definition of "you" and "your" is applied to Additional Insured Endorsement CMP-4786, the Endorsement extends additional insured status to the persons and organizations named in the Schedule "but only with respect to liability for 'bodily injury', 'property

30

damage', or 'personal and advertising injury' caused, in whole or in part, by: ... **(1)** Your acts or omissions; or **(2)** The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for that additional insured." (Policy Number 96-73-6754-7, 2-12-2011–1-14-2016, Endorsement CMP-4786 Additional Insured – Owners, Lessees, or Contractors, Exhibit 1).

77.     Thus, the insurance coverage, if any, provided to Additional Insureds is limited to coverage for bodily injury or property damage "caused, in whole or in part, by: your acts or omissions" or the "acts or omissions of those acting on your behalf." Accordingly, there is no coverage under Policy Number 96-73-6754-7 for bodily injury or property damage caused solely by an Additional Insured.

78.     The claims asserted by the Underlying Plaintiffs against the Additional Insureds in the Underlying Action are *not* for the Additional Insureds' liability for the acts or omissions of the Named Insureds or those acting on the Named Insured's behalf. The Underlying Plaintiffs' SACAC is devoid of any claims based on vicarious liability, contributory liability, or contribution, and joint and several liability has been abolished under Oklahoma law. *See* Okla. Stat. tit. 12, § 15.[1] Because the claims asserted against the Additional Insureds are for the Additional Insureds' sole liability, Policy Number 96-73-6754-7 does not provide coverage to the Additional Insureds for the claims made against them by the Underlying Plaintiffs in the Underlying Action.

---

[1] There is no vicarious liability for RICO violations, violation of civil rights pursuant to 42 U.S.C. § 1983, or violation of constitutional rights. *See Bank v. Rill,* 2008 WL 1766730, *3 (E.D. Okla., April 14, 2008) ("vicarious liability is at odds with the intent and purpose of RICO");*Collier v. Locicero,* 820 F.Supp. 673, 682 (D. Conn. 1993) ("There is no basis in the law of this Circuit for a theory of joint and several liability for violations of constitutional rights."); *Chapman v. Wyoming Dept. of Corr.,* 603 Fed.Appx.710, 711 (10th Cir. 2015) ("vicarious liability is unavailable under § 1983); *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

79.     Endorsement CMP–4786 is further limited by subparagraph 2. which provides that "[a]ny insurance provided to the additional insured shall only apply with respect to a claim made or a 'suit' brought for damages for which you are provided coverage." As set forth herein, the Underlying Action is not a suit for damages for which coverage is provided under Policy Number 96-73-6754-7. Accordingly, no coverage exists for the Additional Insureds.

**E.     The Duty to Defend**

80.     The Policies require State Farm to provide a defense only if an insured has been sued for damages to which the insurance applies. Specifically, Policy Number 96-73-6754-7, 2-12-2010–2-12-2011, provides in relevant part as follows:

**RIGHT AND DUTY TO DEFEND**

*We will have the right and duty to defend any claim or **suit** seeking damages payable under this policy* even though the allegations of the **suit** may be groundless, false or fraudulent. The amount we will pay for damages is limited as described in the Limits of Insurance. Damages because of **bodily injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **bodily injury**. We may investigate and settle any claim or **suit** at out discretion. Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements or medical expenses.

(Policy Number 96-73-6754-7, 2-12-2010-2-12-2011, p. 20, Exhibit 1) (italics added). Policy Number 96-73-6754-7, 2-12-2011–1-14-2016, and Policy Number 96-B1-W299-2, provide in relevant part as follows:

**Coverage L – Business Liability**

When a Limit Of Insurance is shown in the Declarations for **Coverage L – Business Liability**, we will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" *to which this insurance applies. We will have the right and duty to defend the insured by counsel of our choice against any "suit" seeking those damages*. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising

injury", *to which this insurance does not apply*. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" with or without the insured's consent, for any reason and at any time. But:

a.     The amount we will pay for damages is limited as described in **SECTION II – LIMITS OF INSURANCE**; and

b.     Our right and duty to defend end when we have used up the applicable Limit Of Insurance in the payment of judgments or settlements or medical expenses.

(Policy Number 96-73-6754-7, 2-12-2011-1-14-2016, p. 23, Exhibit 1; Policy Number 96-B1-W299-2, p. 23, Exhibit 2) (italics added).

81.     "Under Oklahoma law, a liability insurer is not obligated to defend an action against its insured where the insurer would not be liable under its policy for any recovery in such suit." *See Massachusetts Bay Ins. Co. v. Gordon,* 708 F.Supp. 1232, 1234 (W.D.Okla. 1989); *Nat'l. Am. Ins. Co. v. Okemah Mgmt. Co.*, 2008 OK CIV APP 58, ¶ 11,189 P.3d 1223, 1226 "[A]n insurer does not have a duty to defend if the claims in the underlying action fall within an exclusion from coverage." *Scottsdale Ins. Co. v. Owl Nite Sec., Inc.*, 2006 WL 3742102, *4 (N.D. Okla. Dec. 15, 2006).

82.     For the reasons set forth herein, there exists no possibility of coverage under the Policies for the claims made by the Underlying Plaintiffs against the Underlying Defendants. Accordingly, State Farm has no duty to defend the Underlying Defendants in the Underlying Action.

**WHEREFORE**, State Farm seeks a declaratory judgment that the Policies do not provide coverage for the damages the Underlying Plaintiffs seek to recover from Underlying Defendants in the Underlying Action, and therefore:

(1)     State Farm has no duty to indemnify the Underlying Defendants for liability they may have to the Underlying Plaintiffs in the Underlying Action;

(2)     State Farm has no duty to indemnify Aberdeen, Jim Shofner, or Renita Shofner for

33

their liability, if any, to the Indemnitees for defense and indemnity in the Underlying Action;

(3)     State Farm has no duty to continue the defense of the Underlying Defendants in the Underlying Action; and

(4)     State Farm has no duty to satisfy any judgment entered against the Underlying Defendants in the Underlying Action.

For the reasons set forth herein, State Farm respectfully requests the Court grant it declaratory judgment as set forth herein, and requests it be awarded any further relief this Court deems just and proper.

Respectfully submitted,<br>
**ATKINSON, HASKINS, NELLIS,**<br>
**BRITTINGHAM, GLADD & FIASCO**

Galen L. Brittingham, OBA #12226
James A. Edmonds, OBA #15757
Wynoka M. McClellan, OBA #32833
525 South Main, Suite 1500
Tulsa, Oklahoma 74103-4524
Telephone: (918) 582-8877
Facsimile: (918) 585-8096
*Counsel for Plaintiff, State Farm Fire and*
*Casualty Company*

S:\Files\441\51\COMPLAINT-DJ-ABERDEEN-1-GLB.wpd