IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **STATE FARM FIRE AND CASUALTY COMPANY,** an Illinois Corporation,<br><br>Plaintiff,<br><br>v.<br><br>**ABERDEEN ENTERPRIZES II, INC.,** an Oklahoma Corporation, et al.,<br><br>Defendants. | Case No. 18-CV-654-TCK-FHM |

**OPINION AND ORDER**

Before the Court is the Motion for Summary Judgment filed by Plaintiff State Farm Fire and Casualty Company ("State Farm") pursuant to Fed.R.Civ.P. 56. (Doc. 49). This is a declaratory judgment action in which State Farm seeks a determination concerning the rights and liabilities of the parties under two Business Insurance Policies. Defendants have responded opposing the motion. (Docs. 52, 54).

**I. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant bears the burden of showing that no genuine issue of material fact exists. *See*, *Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* However, the party opposing a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party opposing a motion for summary judgment must also

make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

A movant that "will not bear the burden of persuasion at trial need not negate the nonmovant's claim, "but may "simply ... point[ ] out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal citations omitted). If the movant makes this prima facie showing, "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992)). "In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial. The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (internal citations omitted).

## II. MATERIAL FACTS

State Farm issued a Business Policy (Policy Number 96-73-6754-7) to Jim D. Shofner. At all relevant times, Mr. Shofner was an officer of Aberdeen Enterprizes II, Inc. ("Aberdeen"). Aberdeen is a debt collection company specializing in collection of court fines, penalties, and assessments. Aberdeen was added as a Named Insured to Policy Number 96-73-6754-7 on June 12, 2013. When Policy Number 96-73-6754-7 was cancelled effective January 14, 2016, State Farm issued another Business Policy (Policy Number 96-B1-W299-2) to Jim D. Shofner and his wife Renita Shofner. Aberdeen was an Additional Insured under Policy Number 96-B1-W299-2 pursuant to Endorsement CMP-4789. That Endorsement extended additional insured status to Aberdeen "but only with respect to [its] liability as co-owner of the premises." There are no claims against Aberdeen in the Underlying Action for "liability as co-owner of the premises."

On January 1, 2010, Aberdeen entered into an Agreement for Collection ("Agreement") with the Oklahoma Sheriffs' Association ("OSA"). The Agreement required Aberdeen to provide debt collection services to the OSA in its capacity as administrative agent for participating Oklahoma County Sheriffs. Pursuant to the Agreement, Aberdeen would collect "fines, penalties

2

and assessments of certain 'Warrants ... issued by the County Sheriffs in the State of Oklahoma.'" (Doc. 5-1, p. 2).

On November 2, 2017, Ira Lee Wilkins, on behalf of a putative class, filed Case No. 17-CV-606-TCK-FHM ("Underlying Action") in the Northern District of Oklahoma. The Plaintiffs in the Underlying Action ("Underlying Plaintiffs") filed a Second Amended Complaint ("SAC") on September 21, 2018. The Defendants named in the SAC include Aberdeen, Mr. Shofner, fifty-three Oklahoma Sheriffs, the Court Clerks of Tulsa and Rogers counties, the Boards of County Commissioners of Tulsa and Rogers Counties, and Tulsa County Court Administrator Darlene Baily. ("Underlying Defendants"). The Underlying Plaintiffs seek to recover from the Underlying Defendants for alleged economic harm and detention resulting from a debt collection practice which they contend was based on extortion, conspiracy, coercion, threats, detention and the illegal issuance of arrest warrants.

As a result of the Underlying Action, certain Underlying Defendants made demand on State Farm for defense and immunity under the Policies. The Underlying Defendants who made demand on State Farm for defense and indemnity consist of those alleging that they are Named Insureds or Additional Insureds under the Policies. Certain other Underlying Defendants made demand on Aberdeen for defense and indemnity pursuant to the Agreement for Collection. Aberdeen, in turn, made a demand on State Farm to indemnify it under the Policies for its defense and indemnity of the Underlying Defendants.

State Farm has provided a defense for certain Underlying Defendants subject to a reservation of rights, including the right to bring this declaratory judgment action. State Farm contends the Policies do not provide coverage to the Underlying Defendants for the damages the Underlying Plaintiffs seek to recover. State Farm moves for summary judgment finding that the Policies do not provide coverage for the damages the Underlying Plaintiffs seek to recover from the Underlying Defendants in the Underlying Action and therefore: (1) State Farm has no duty to indemnify the Underlying Defendants for liability they may have to the Underlying Plaintiffs in the Underlying Action; (2) State Farm has no duty to satisfy any judgment entered against the Underlying Defendants in the Underlying Action; and (3) State Farm has no duty to continue the defense of the Underlying Defendants in the Underlying Action.

### III. ANALYSIS

"Under Oklahoma law, the interpretation of insurance contracts is 'a matter of law for the Court to determine ....'" *Yousuf v. Cohlmia*, 741 F.3d 31 (10th Cir. 2014) (quoting *Dodson v. St. Paul Ins. Co.,* 812 P.2d 372, 376 (Okla. 1991)). "Parties may contract for risk coverage at will and are bound by the policy terms to which they agree." *Yousuf v. Cohmia*, 718 F. Supp. 2d 1279, 1285 (N.D. Okla. 2010) (*citing Dodson*, 812 P.2d at 376). "The construction of an insurance policy should be a natural and reasonable one, fairly constructed to effectuate its purpose." *Id.* (quoting *Wiley v. Travelers Ins. Co.,* 534 P.2d 1293, 1295 (Okla. 1974)). "[N]either forced nor strained construction will be indulged, nor will any provision be taken out of context...." *Dodson*, 812 P.2d at 376. "Coverage does not turn on the legal theory under which liability is asserted, but on the cause of the injury." *Farmers Alliance Mut. Ins. Co. v. Willingham*, 2009 WL 3429768, *4 (N.D. Okla. 2009); *Zurich Am. Ins. Co. v. Good To Go, LLC*, 2018 WL 8333413, *8 (W.D. Okla. 2018). Courts are not at liberty to rewrite the policy for the parties where it is otherwise unambiguous. *Am. Econ. Ins. Co. v. Bogdahn*, 89 P.3d 1051, 1054 (Okla. 2004).

The first step in coverage analysis is to determine if the insuring agreement in the policy extends coverage to the damages sought to be recovered from the insured. *Dodson*, 812 P.2d at 377. If coverage is extended, the next step is to determine if policy exclusions apply, thereby negating coverage. *Id.* "The insured has the burden of showing that its claim is covered under the policy." *Boggs v. Great Nation Ins. Co*, 659 F. Supp. 2d 1199, 1204 (N.D. Okla. 2009). "Once the insured establishes coverage, 'the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy.'" *Id. (quoting Pitman v. Blue Cross & Blue Shield of Okla.*, 217 F.3d 1291, 1298 (10th Cir. 2000)).

**A. Extension of Coverage**

Subject to their terms and conditions, the Policies extend coverage to "bodily injury" and "property damage" caused by an "occurrence." The Policies define the term "bodily injury" in relevant part as "bodily injury, sickness or disease ... including death." The Policies define the term "property damage" in relevant part as "physical injury to or destruction of tangible property."

### 1. Bodily Injury

The Underlying Plaintiffs do not seek to recover for "bodily injury." The Underlying Plaintiffs' SAC consists of one hundred and two (102) pages setting forth three hundred and seventy-two (372) numbered paragraphs. One section of the SAC is devoted exclusively to "INJURY TO THE NAMED PLAINTIFFS." (SAC, Doc. 5, ¶¶ 155-213). Nowhere in their SAC do the Underlying Plaintiffs allege bodily injury, sickness, disease, or death. Instead, the Underlying Plaintiffs allege "economic harm," "physical bodily confinement," and "physical restraint." (SAC, Doc. 5, ¶¶ 99, 315, 327, 337, 351-52). One of the Underlying Plaintiffs, David Smith, alleges he "experienced stress and anxiety." (SAC, Doc. 5, ¶¶ 20, 174).

Physical confinement and physical restraint do not constitute "bodily injury, sickness, or disease." *Armstrong v. Federated Mut. Ins. Co.*, 785 N.E.2d 284, 292-93 (Ind. Ct. App. 2003) ("The phrase 'bodily injury' connotes physical damage to the body such as would result from an impact upon the body by a physical force."); *Allstate Ins. Co. v. Diamant*, 518 N.E.2d 1154, 1156 (Mass. 1988) ("Bodily injury [as contrasted with personal injury] is a narrow term and encompasses only physical injuries to the body and the consequences thereof."). Nor do stress and anxiety constitute "bodily injury." *United Pac. Ins. Co. v. First Interstate Bancsystems of Mont. Inc.*, 690 F.Supp. 917, 918 (D. Mont. 1988) (Claims of "physical and emotional stress and humiliation" do not constitute "bodily injury, sickness or disease."); *Yousuf v. Cohlmia*, 718 F. Supp.2d 1279, 1290 (N.D. Okla. 2010) ("Arguably, headaches and stomach upset do not rise to the level of bodily injury contemplated by the policy definition: 'bodily injury, sickness, or disease.'") Even emotional distress, which the Underlying Plaintiffs have not alleged, does not constitute "bodily injury" in the insurance context. *Nat'l Fire Ins. Co. of Hartford v. NWM-Okla., LLC, Inc.*, 547 F. Supp.2d 1238, 1246 (W.D. Okla. 2008) ("The majority of courts hold that a claim for emotional distress, absent any physical injury, does not constitute 'bodily injury' in the insurance context"). Accordingly, the Court finds the damages the Underlying Plaintiffs seek to recover from the Underlying Defendants do not constitute "bodily injury."

### 2. Property Damage

The Underlying Plaintiffs do not seek to recover for "property damage." As discussed *supra*, the Policies define the term "property damage" as "physical injury to or the destruction of tangible property." The Underlying Plaintiffs have not alleged physical damage to tangible property. Instead, the Underlying Plaintiffs allege injuries "including payment of unlawful debt to RICO Defendants," and "economic harm" arising from being forced to pay court fines through threats of being jailed. (SAC, Doc. 5, ¶¶ 297, 301, 304, 308, 315).

In construing a policy defining "property damage" as "physical injury to tangible property," the Tenth Circuit has recognized that money is not "tangible property." *Mullin v. Travelers Indem. Co. of Conn.*, 541 F.3d 1219, 1223 (10th Cir. 2008). The *Mullin* court cited numerous cases recognizing that currency, investments, and bank account funds are not "tangible property." *Id.*

Further, economic or pecuniary loss does not constitute "property damage." The court addressed the issue in *Boggs* v. *Great Northern Ins. Co.*, 659 F.Supp.2d 1199 (N.D.Okla. 2009). Identical to the definition of "property damage" set forth in the Policies, the policies in *Boggs* defined "property damage" as "physical injury to or destruction of tangible property." The court held that "[t]he Underlying Claims in this case are 'economic or pecuniary in nature,' and are ... not property damage under the Insurance Policies." See also, *Ellsworth v. Grinnell Mut. Reinsurance Co.,* 2016 WL5940198, *6 (Ill. App. Oct. 8, 2016) ("Because plaintiffs seek recovery for economic loss and not physical injury to tangible property, '[n]o property damage is alleged and coverage is not afforded.'"); *Colony Ins. Co. v. Montecito Renaissance, Inc.,* 2011 WL 4529948, at *3–4 (M.D. Fla. Sept. 30, 2011) (denying coverage under the insurance policy on summary judgment for several counts where economic injury was not property damage pursuant to the policy); *James River Ins. Co. v. Arlington Pebble Creek, LLC*, 188 F. Supp. 3d 1246, 1255–56 (N.D. Fla. 2016) (holding no duty to defend because underlying action did not seek damages "from physical injury to tangible property" per the policy, "but instead [sought] economic damages."). Here, as in the foregoing cases, the Underlying Plaintiffs' economic and pecuniary damages do not constitute "property damage" within the meaning of the term in the Policies.

### 3. Occurrence

Because the Underlying Plaintiffs do not seek to recover from the Underlying Defendants for "bodily injury" or "property damage," coverage analysis could conclude because the Policies limit coverage to such damages. However, in the alternative, even if the Underlying Plaintiffs were found to have alleged "bodily injury" or "property damage," coverage extends to such damages only if "caused by an 'occurrence."

The Policies define the term "occurrence" in relevant part as an "accident." Under Oklahoma law, an "accident" is "[a]n event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event, chance, or contingency." *United States Fid. & Guar. Co. v. Briscoe*, 239 P.2d 754, 757 (Okla. 1951). The *Briscoe* court defined the term "accidental" as "happening by chance or unexpectedly, undesigned, unintentional, unforeseen, or unpremeditated." *Id*. Foreseeability has a more specific meaning in the insurance context than in the tort context. *Cranfill v. Aetna Life Ins. Co.*, 49 P.3d 703, 706-07 (Okla. 2002). The Oklahoma Supreme Court has noted that "[i]t is only when the consequences of the act are so natural and probable as to be expected by any reasonable person that the result can be said to be so foreseeable as not to be accidental." *Id*. at 707.

The Underlying Plaintiffs have not alleged damages that happened by chance or that arose from any sudden, unexpected, unintended, event, chance, or contingency. The words "accident" or "accidental" do not appear in the Plaintiffs' 102 page SAC. Nor do the words "negligent," or "negligence." Instead, the Underlying Plaintiffs allege damages caused by an intentional debt collection practice which they contend was based on willful, knowing, and intentional extortion, conspiracy, coercion, threats, and the issuance of arrest warrants. The consequences of the foregoing acts including economic harm, confinement, detention, restraint, stress, and anxiety, "are so natural and probable as to be expected by any reasonable person that the result can be said to be so foreseeable as not to be accidental." *Cranfill*, 49 P.3d at 707. As such, the Court finds the Underlying Plaintiffs have not alleged damages caused by an "occurrence," and therefore the Policies do not extend coverage.

### 4.     The Policies do not Extend Coverage to Equitable and Injunctive Relief

The Underlying Plaintiffs seek equitable relief in the form of a declaratory judgment, injunction, and recovery for unjust enrichment. (SAC, Doc. 5, ¶¶ 15, 34, 216, 222, 231, 256, 267, Count Ten, p. 98, p. 100, ¶ k.). Equitable relief, in the form of an injunction or otherwise, does not constitute 'damages' within the meaning of an insurance policy providing liability coverage. *See Hunter v. Hirsig*, 614 Fed. Appx. 960, 963 (10th Cir. 2015) ("[T]he Court has drawn an important distinction between an action at law for damages–which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation–and an equitable action for specific relief.*"*). Based on the terms of the Policies, the Court finds the claims seeking equitable and declaratory relief are not covered because they do not seek monetary damages of any kind, nor do they reveal facts that would support such a claim.

### 5.     The Policies do not Extend Coverage for Punitive and Treble Damages

In addition to actual damages, the Underlying Plaintiffs seek to recover punitive and treble damages. (SAC, Doc. 5, ¶¶ 15, 317; p. 99, ¶ b., p. 101, ¶ j.). Punitive damages are not damages for "bodily injury" or "property damage" as those terms are defined in the Policies. Even if the Policies extended coverage to such damages, Oklahoma public policy does not allow a defendant to escape liability for exemplary or punitive damages by shifting the loss to an insurer. *See Dayton Hudson Corp. v. Am. Mut. Liab. Ins.*, 621 P.2d 1155, 1160 (Okla. 1980).

The Underlying Plaintiffs seek to recover treble damages pursuant to civil RICO. (SAC, Doc. 5, ¶ 317, p. 99 b.). Treble damages do not constitute "bodily injury" or "property damage" within the meaning of those terms in the Policies. Instead, treble damages–especially when recoverable for RICO violations–are damages to punish and deter, or damages in the form of fines or penalties. *See Summers v. Federal Deposit Ins. Corp.*, 592 F. Supp. 2d 1240, 1243 (W.D. Okla. 1984) (finding treble damages under RICO "essentially penal."). The same rationale underlying the public policy impediment to insuring against punitive damages applies equally to treble damages. The *Summers* court reached this conclusion noting, "[i]t would be plainly unjust to permit such an award against the receiver, for innocent depositors and creditors alone would be punished, not the putative wrongdoer bank."*See also, Country Manors v. Master Antenna Sys.*, 534 So.2d 1187 (Fla. App. 4 Dist. 1988) ("We consider treble damages to be in the nature of a fine

or penalty, similar to punitive damages, which are not covered by insurance by reason of public policy."). Thus, the Court finds the Policies provide no coverage for punitive or treble damages.

### 6. Policy Number 96-73-6754-7 does not Extend Coverage to Additional Insureds Based on the Claims Made by the Underlying Plaintiffs

In the absence of "bodily injury" or "property damage" caused by an "occurrence," the Policies do not extend coverage. However, in the alternative, even if the Policies were found to extend coverage, coverage does not extend to Additional Insureds because they have not been sued for liability with respect to injury caused in whole or in part by a Named Insured.

Endorsement CMP-4789 to Policy Number 96-73-6754-7 extends Additional Insured status to the persons and organizations named in the Endorsement Schedule "but only with respect to liability for 'bodily injury', 'property damage', or 'personal and advertising injury' caused, in whole or in part, by: ... (1) Your acts or omissions; or (2) The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for that additional insured." (UF No. 5). The Policy defines the terms "you" and "your" as "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." (Doc. 3, p. 8, Doc. 3, p. 108; 3-1, p. 11; 3-1, p. 99; 3-2, p. 33; 3-2, p. 115). Depending on the policy period, the Named Insureds were Aberdeen, Jim Shofner, and/or Renita Shofner. (UF Nos. 4, 10, 11). Thus, the coverage, if any, for Additional Insureds is limited to coverage with respect to their liability for the "acts or omissions" of Aberdeen, Jim Shofner, or Renita Shofner. There is no coverage under Policy Number 96-73-6754-7 for damage caused solely by an Additional Insured.

An additional insured clause virtually identical to that in the State Farm Policy was construed by the court in *Burlington Ins. Co. v. NYC Transit Auth.*, 29 N.Y.3d 313, 326 (N.Y. App. 2017). The court noted that the language "caused, in whole or in part" was added to the additional insured endorsement to eliminate coverage for the sole negligence of the additional insured and extend coverage for vicarious or contributory liability. Specifically, the court noted as follows: In 2004–four years before the parties entered the construction contract and BSI purchased insurance from Burlington–the version of the contract was amended to replace the language "arising out of" with "caused, in whole or in part." The change was intended to provide coverage for an additional

insured's vicarious or contributory negligence, and to prevent coverage for the additional insured's sole negligence. *Id.* at 486.

The claims asserted by the Underlying Plaintiffs against the Additional Insureds are not for the Additional Insureds' liability for the acts or omissions of Aberdeen, Jim Shofner, or Renita Shofner. The Underlying Plaintiffs' SAC is devoid of any claims based on vicarious liability, contributory liability, or contribution, and joint and several liability no longer exists under Oklahoma law. *See* Okla. Stat. tit. 12, § 15. There is no vicarious liability for RICO violations, violation of civil rights pursuant to 42 U.S.C. § 1983, or violation of constitutional rights. *See Bank v. Rill*, 2008 WL 1766730, *3 (E.D. Okla., April 14, 2008) ("vicarious liability is at odds with the intent and purpose of RICO");*Collier v. Locicero*, 820 F.Supp. 673, 682 (D. Conn. 1993) ("There is no basis in the law of this Circuit for a theory of joint and several liability for violations of constitutional rights."); *Chapman v. Wyoming Dept. of Corr.,* 603 Fed. Appx.710, 711 (10th Cir. 2015) (vicarious liability is unavailable under § 1983); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each ... defendant ... has violated the Constitution."); *Schattilly v. Daugharty*, 656 F. Appx. 123 (6th Cir., July 29, 2016) (noting "Section 1983 creates a private right of action against officials who, under color of state law, deprive individuals of their ... constitutional rights"). As such, the Additional Insureds have not been sued for the acts or omissions of any Named Insured, but have been sued for their own acts or omissions. Because the claims asserted against the Additional Insureds are for their own acts or omissions, Policy Number 96-73-6754-7 does not provide coverage to the Additional Insureds for the claims asserted against them by the Underlying Plaintiffs.

Coverage, if any, for Additional Insureds under Policy Number 96-73-6754-7 is further limited by subparagraph 2 of Endorsement CMP–4786. That subparagraph provides that "[a]ny insurance provided to the additional insured shall only apply with respect to a claim made or a 'suit' brought for damages for which you [Aberdeen, Jim Shofner, or Renita Shofner] are provided coverage."(brackets added) (UF No. 5). As set forth herein, the Underlying Action is not a suit for damages for which coverage is provided for Aberdeen, Jim Shofner, or Renita Shofner because the Underlying Plaintiffs do not seek to recover for "bodily injury" or "property damage" caused by an "occurrence." Accordingly, no coverage exists for the Additional Insureds even if the claims asserted against them were for the "acts or omissions" of the Named Insureds.

### 7. Policy Number 96-B1-W299-2 does not Extend Coverage to Additional Insureds for the Damages Sought by the Underlying Plaintiffs

The Named Insureds under Policy Number 96-B1-W299-2 are Jim & Renita Shofner. Policy Number 96-B1-W299-2 includes Endorsement CMP-4789 which identifies "Additional Insureds." The only Additional Insured identified in Endorsement CMP-4789 is Aberdeen Enterprizes II, Inc. Thus, the OSA, its Board of Directors, Executive Directors, and Officers are not Named Insureds or Additional Insureds under Policy Number 96-B1-W299-2. As such, no coverage exists for them under Policy Number 96-B1-W299-2.

Moreover, even though Aberdeen is an Additional Insured, that status is limited "with respect to [its] liability as co-owner of the premises shown in the Schedule." (UF No. 12). There are no claims made against Aberdeen in the Underlying Action with respect to its liability as co-owner of the premises shown in the Schedule. The Underlying Action has no relation to the premises shown on the Schedule. Thus, Aberdeen is not an Additional Insured under Policy Number 96-B1-W299-2 for the claims asserted against it by the Underlying Plaintiffs.

### A. Policy Exclusions

In the absence of the extension of coverage, exclusions are irrelevant. However, in the event coverage were extended, the Policies contain exclusions which would apply.

### 1. Exclusion for False Arrest, Detention or Imprisonment

The Underlying Plaintiffs seek to recover damages for detention and restraint which they contend resulted from the issuance of illegal arrest warrants. (SAC, Doc. 5, ¶¶ 2, 10, 12, 25, 31, 65). Pursuant to Endorsements FE-6345, FE-6346, and CMP-4721, the Policies exclude coverage for "personal and advertising injury" which is defined to include the offenses of "false arrest, detention or imprisonment." Accordingly, the Policies do not provide coverage for the damages the Underlying Plaintiffs seek to recover from the Underlying Defendants for detention, confinement, and restraint.

### 2. Exclusion for Injury Intended, Expected, and Resulting from Willful and Malicious or Criminal Acts

The Policies contain an exclusion for injury that is intended or expected and injury resulting from willful and malicious or criminal acts. The Underlying Plaintiffs allege injury caused by an intentional debt collection practice which they contend was based on extortion, conspiracy, coercion, threats, and the issuance of illegal arrest warrants. A reasonable person would expect the damages alleged economic harm, confinement, restraint, stress, and anxiety, to result from such a practice.

The Underlying Plaintiffs also allege their injuries resulted from the Underlying Defendants' "willful, knowing and intentional acts." (SAC, Doc. 5, ¶¶ 297, 301, 304, 308, 315). Injury resulting from alleged illegal and criminal acts is also alleged. Specifically, the Underlying Plaintiffs' claims include a civil RICO claim. Such claims require proof of a "racketeering activity" which is defined as any "act which is indictable." *Tal v. Hogan*, 453 F3d 1244, 1261 (10th Cir. 2006). The Underlying Plaintiffs also allege injuries resulting from "illegal threats," "illegal treatment," "illegal debt-collection practices," "illegal arrest warrants," and "illegal policies." (SAC, Doc. 5, ¶¶ 4, 11, 15, 65). Finally, the Underlying Plaintiffs allege claims pursuant to 18 U.S.C. § 1952 which requires an intent to participate in an "unlawful activity." (SAC 5, Doc. 5, ¶ 290), and allege harm in the form of detention and restraint arising from the issuance of arrest warrants. (SAC, Doc. 5, ¶¶ 2, 10, 12, 25, 31, 65, 327). The injury alleged by the Underlying Plaintiffs falls within the exclusion for injury that is intended or expected and/or injury resulting from willful and malicious or criminal acts.

### IV. CONCLUSION

The Policies provide for defense if an insured has been sued for covered damages. Specifically, Policy Number 96-73-6754-7, 2/12/2010–2/12/2011, provides that "[w]e will have the right and duty to defend any claim or suit seeking damages payable under this policy ...." (UF No. 22). Policy Number 96-73-6754-7, and Policy Number 96-B1-W299-2, provide that: "we will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' ... to which this insurance applies. We will have the right and duty to defend the insured ... against any 'suit' seeking those damages." (UF No. 22). Based on the foregoing terms of the Policies, State Farm has a duty to defend only when the insured has been

sued for covered damages. Consistent with the foregoing terms of the Policies, "under Oklahoma law, a liability insurer is not obligated to defend an action against its insured where the insurer would not be liable under its policy for any recovery in such suit." Mass. Bay Ins. Co. v. Gordon, 708 F.Supp. 1232, 1234 (W.D. Okla. 1989); *Scottsdale Ins. Co. v. Owl Nite Sec., Inc.*, 2006 WL 3742102, *4 (N.D. Okla. Dec. 15, 2006). For the reasons set forth herein, there exists no coverage under the Policies for the claims made by the Underlying Plaintiffs against the Underlying Defendants. Therefore, State Farm has no duty to defend, or indemnify the Underlying Defendants in the Underlying Action and State Farm is entitled to judgment as a matter of law.

**IT IS SO ORDERED this 6th day of August, 2020.**

TERENCE C. KERN
United States District Judge